In re SZANTO, Peter SZANTO appearing pro se, Natalie Scott appearing for Apple Ease. All right, good morning Mr. SZANTO. As you heard me say, you could reserve part of your 15 minutes for rebuttal. Would you like to do that? And if so, how much? I'll split it half and half, your honor. Half and half, okay. It's your responsibility, by the way, to watch the clock. I'll try to remind you, but it's on you to watch the clock, okay? Of course, your honor. All right, please, please go ahead. All right. So first off, I want to be sure that the court understands that what happened in this case is that Eppeli responded to my brief in another case. And so even though the case, even though my opening brief, in this case, is what the Eppeli responded to, my opening brief was actually for another portion of the events that happened in Singapore. And so I made that clear in my, in the response brief, in the reply brief, in the first few lines that I would try as best as I could to reply to a response that was not responding to what are the circumstances of this case. And so as I understood from the Eppeli's brief, her main gripe was that she picked up on Judge McKittrick's notion that contempt could only derive from an order. And that's not true. When you look at Black's Law Dictionary, contempt arises from willful disregard of a public authority. And when I've been, when I have been a clerk in the district court in New York and in Georgia, oftentimes the judge would find attorneys or parties in contempt summarily. And the last time I had occasion to read the contempt portion of California's evidence code, it stated that unless the contempt was for an amount over $5,000, it was not even appealable. And so the issue here is when the Eppeli attacked the idea that there was no order for my appeal, that was an error. But in point of fact, the order that was the basis of my desire to have the Eppeli's held in contempt was the original employment order. And so the problem with the situation was that Eppeli's were fined money in Singapore that belonged to me that simply did not exist. And so thereby comes the second problem, that Eppeli's were proceeding contrary to Singapore's law, which means, which is that a bankruptcy judgment simply cannot be by the Singapore court, it just cannot happen. And so the contempt that I'm speaking of in this case, is the fact that you have three attorneys, and let me go to the highlight of that. One of the things that Judge McKittrick never even did, in addition to not having these attorneys get ProHoc Dece permission to appear in this case, that the people who are the Eppeli's are actually attorneys. And so this makes just one more laughable instance in the mockery of justice that is my seven years in the prison of the bankruptcy court in Oregon. Now, armed with that information, the reason that these attorneys, I suggest, are in contempt, because they simply did not follow the rules that are in the employment order. And the rules in the employment order, derived from 11 USC 101, paragraph 14, they are not disinterested. These Eppeli's are acting solely and strictly for their own benefit. And that is proven that is proven by the mere fact that they are pursuing an action that is contrary to Singapore law. Now, before going further, the context that all of this was happening in was my wife going through her final illness in Singapore. So what I was terrified about this attack against me in Singapore could have resulted in my wife's military pension benefits for medical care being expropriated by the court. In my experience, here in this bankruptcy, all of my money has been expropriated. And so the basis of where I'm coming from, in this seven year tormented torment of bankruptcy, is that from the beginning, it had nothing to do with anything else except the theft and expropriation and the stealing of my property. And so this Singapore incident was going on while my wife was in the money that had been provided to her by the Israeli Defense Force medical insurance would be somehow expropriated by the Singapore court. So there was terror after terror after terror that this matter was proceeding through. And again, bear in mind, Your Honors, this is a seven year bankruptcy. If you recall, the Chrysler bankruptcy in 2008, 34 days, if you recall the Washington mutual bankruptcy in 2008, four years, me, I am a victim here, I have been suffering through this bankruptcy for seven years. So the 10114, these are not disinterested people. The violation, the contemptuous violation 32011 USC 327. These people have an interest adverse to the the state, they are pursuing an action for their own benefit in contravention of Singapore law, they are acting solely and strictly for their own benefit. There is nothing legal going on here. Then going to FRB P 2014. A there was no necessity for employment. The money in Singapore always belonged to my wife. And the only way only thing that happened was that trustee are not having no business common sense or experience. presume that my trading Singapore dollars must be must be occurring in Singapore. So the only reason that the Singapore issue ever came up was because Mr. are not did not understand enough about financial markets, currency markets to understand that you can trade as I did Singapore dollars in your in the foreign exchange market in New York. And based on your inside the seven and a half minutes, Mr. Santos, I just wanted to point out to you you're you're inside your seven and a Okay, very good. Very good, your honor. And so from the get go, the entire matter, as I explained in the reply brief was contemptuous of the employment order. For the reasons I stated, there was never anything that had to be done for the bankruptcy court because I had no money in Singapore. So I'll let a Peli speak. Okay, thank you. Scott, please go ahead. Thank you, your honors. I don't have much to add beyond the briefing. I think I have reviewed the reply brief, I think a lot of the concerns that are raised by Mr. Santo, either the time has passed, or this is not the procedurally appropriate way to speak, for example, intentional infliction of emotional distress damages. Regarding what was just said in terms of what order he is saying the contempt related to that employment order was entered in December of 2018. The contempt motion was filed in March of 2021. The time to raise the disinterested issue had there been evidence of such would have been at the time of the application to employ. So again, it's, it's, it's the time has come and gone for those arguments to be made. And unless the court has questions, I'm, I'm prepared to rely on the briefing on my brief. Any questions from the panel? I don't have any questions. Thank you, your honors. Okay, thank you. All right, Mr. Santo back to you. You've got let's see, six and a half minutes, please go ahead. All right, very good. The comment that Ms. Scott made that the time to pass has lapsed is ridiculous. There was an employment order. The employment order had ramifications. I went to Singapore to make sure that I appear and I believe I made sure that I appeared in court. So nothing of a surprise happened. As I pursued my defense and the defense of my wife's money in Singapore, the matter spilled out that these attorneys, again, let me emphasize, whose ability to I'm saying is when I was a clerk in the district court, we had a list of what each nation required for attorney licensure. And in some nations, it's merely a baccalaureate degree. In some nations, it's merely a two year degree. And so these attorneys, not only have they never proven that they are actually attorneys, they have not done the standard of the district court in Oregon, which is to apply pro hoc vichae. And I believe in one of the papers that Judge McKittrick wrote, he just blew that off as though it were of insignificance. I disagree with that. I think anybody who has any sort of participation in any case in a federal court must abide the rules. And one of the rules is to make the pro hoc vichae application so the court can go through the to make sure that the there are no misgivings about the employment. For example, if a North Korean attorney were a participant in this case, I think you could be sure that somebody along the way would have done some checking to see what his qualifications were, what his licensure was. And here, demonstrating the court's animosity towards me, their court, not this court, not this panel, but Judge McKittrick's court's animosity towards me. These attorneys are given money for violating Singapore law. And if you take that one step further, and you say, all right, well, there was a case against Santo in Singapore, the outcome was adverse to Santo, then there may have been. And in fact, Singapore law is such that when a person loses a case, there are always attorney's fees. And so one of the questions, and I didn't get to it in my briefing, because it didn't seem relevant at the time, but perhaps it's relevant now. One of the metrics that this panel can use is the fact that Singapore law always gives attorney's fees, had there been an adverse decision against me, in Singapore, there would have been attorney's fees. And so instead of actually doing something along the lines of employment, to assist the state, to assist the trustee, all of these attorneys merely filed papers. And here's another aspect of their improper behavior. No paper from the Singapore action was ever served on me. Every paper that the appellees filed, I had to go to the courthouse and look up individually. And again, in Singapore, it's not as easy as here in the United States where all the records are public. In Singapore, the records are private, you have to make application to a judge to allow you to even look at the record. And so every week or so I would go to the courthouse, make application for the judge to see the record, to see the files to make sure that these appellees had not filed something adverse to my interests. And as the outcome demonstrates, and it's inferential for this panel, as the outcome demonstrates, had these appellees received any sort of judgment or decision against me, they would have also been awarded attorney's fees. And since they were not, they came to the United You don't even have to have a reason in Judge McKittrick's court to get money against Peter Santo. The animosity is of such a high degree. And so here you have a situation where the employment wasn't necessary, where the appellees were merely padding their own pocketbooks. And there, there was no basis that they should have been employed in the first place. And I put that together as a contempt. And my basis of the contempt is that when you look in Black's Law Dictionary, contempt is a willful disregard of public authority. The notion that Judge McKittrick said it has to be on an order is not so. As I mentioned, I've seen dozens of attorneys sanctioned summarily in court for mouthing off for being obstreperous, for being cynical. You know, I've seen clients to an action being summarily sanctioned for contempt, because of making gestures or facial grimaces. And so the idea that it has to be on an order is not mandatory. But what I am pursuing is that the employment order was never necessary. The employment order does not have a... Okay, I'm going to stop you, Mr. Santo, because your time has expired. But thank you very much. Appreciate your argument. The matter is submitted. Very good. Thank you very much, Shimon. Thank you. Thank you.
judges: Faris, Brand, Spraker